## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONTRELL HENDERSON,** | : | **No. 4:22-cv-1179** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **BRIAN BUSCHMAN, MD, *et al.*,** | : | |
| **Defendants** | : | |

FILED
SCRANTON

JAN 19 2024

PER

DEPUTY CLERK

## **MEMORANDUM**

## I. Background

On July 28, 2022, Plaintiff, Dontrell Henderson, an inmate formerly housed in the Allenwood Low Security Correctional Institution, ("LSCI-Allenwood") White Deer, Pennsylvania,[1] filed this Bivens[2] civil rights action, pursuant to 28 U.S.C. §1331. (Doc. 1). The named Defendants are Dr. Brian Buschman, Clinical Director at Federal Correctional Complex Allenwood

---

[1] Plaintiff is currently housed in the Federal Correctional Institution, Florence, Colorado. (Doc. 13).

[2] Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

("FCC-Allenwood"); and the following LSCI-Allenwood employees: Dr. Michael Moclock; Amy Creveling, Assistant Health Services Administrator and Amber Pedro, Physician's Assistant (PA). Id. Plaintiff claims that Defendants exhibited deliberate indifference to his sleep apnea symptoms. Id. For relief, Plaintiff seeks "monetary damages and for the BOP to follow-through with recommended sleep study in addition to proper treatment and follow-up care based on the sleep study results." Id.

Presently before the Court is Defendants motion to dismiss and/or for summary judgment. (Doc. 12). The motion is fully briefed and is ripe for disposition. For the reasons set forth below, the Court will grant Defendants' motion for summary judgment.

## II. **Standard of Review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247--48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials. Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

The fact that the non-moving party in this case is proceeding *pro se* does not relieve him of the obligation under Rule 56 to produce evidence that raises a genuine issue of material fact. See Mala v. Crown Bay Marina, Inc.,

- 3 -

704 F.3d 239, 245 (3d Cir. 2013) ("At the end of the day, [*pro se* litigants] cannot flout procedural rules-they must abide by the same rules that apply to all other litigants.") (citation omitted).

## III. **Statement of Undisputed Facts**[3]

On July 26, 2021, Henderson was seen by Dr. Moclock at a Chronic Care Clinic encounter. (Doc. 21-9 at 1-3, Medical Record). He reported to Dr. Moclock that he "generally feels well" but is "concerned, though, about his severe snoring and the impact it's having on his neighbors" as "it awakens them and they become confrontational." Id. He also complained of "episodes of excessive daytime sleepiness, e.g., he'll fall asleep at the computer and

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party]...as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. Id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. 21). Plaintiff did not file an appropriate response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. Thus, the Court deems the facts set forth by Defendants to be undisputed. See M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

someone will have to awaken him." Id. Henderson also admitted that he was non-compliant with his hypertension therapy often skipping prescribed medications for days and sometimes a week or more at a time, stating that "he would not like to be on medication all his life." Id. At the conclusion of the visit, Dr. Moclock scheduled Henderson for a nocturnal pulse oximeter, ordered a follow-up to include Epworth Sleepiness scale, and a review of his most recent complete blood count. Id.

On August 8, 2021, medical staff administered the nocturnal pulse oximeter. (Doc. 21-12 at 1-9, Nocturnal pulse oximetry results).

On September 13, 2021, Henderson failed to show up for a scheduled appointment to review the nocturnal pulse-ox results and other medical problems. (Doc. 21-13 at 2).  His appointment was rescheduled. Id.

On September 22, 2021, Henderson failed to show up for his rescheduled follow-up appointment, to review the results of his sleep study. (Doc. 21-13 at 1).

On October 14, 2021, Henderson's request to LSCI-Allenwood Warden asking "[h]ow do I go about getting my results as well as my CPAP machine[]" was responded to as follows:

> You did not report to your scheduled appointments with your provider on 9/13/21 and 9/22/21. These appointments are documented on the institution call-out sheets. These

appointments were made to discuss your nocturnal pulse ox results. You should report to sick call in your housing unit to request a new appointment with your Primary Care Provider.

(Doc. 1-1 at 11).

On October 29, 2021, PA Scott Flick, not a named Defendant in the instant action, met with Henderson to review the nocturnal pulse oximeter and submitted a consultation request for a split night sleep study offsite from the prison as well as a repeat CBC due to anemia showing on the last draw. (Doc. 21-14 at 1). A consultation request was submitted on October 29, 2021, with a scheduled target date of December 31, 2021. (Doc. 21-15 at 1).

On November 1, 2021, Dr. Buschman, in his role as the Institution's Clinical Director, reviewed Plaintiff's sleep study results and consultation request for offsite testing. (Doc. 21-15 at 3). Dr. Buschman disapproved the consultation request, specifically noting the following:

> Sleep study, if positive, could lead to a diagnosis of OSA. Treatments for OSA vary. CPAP has not been found to improve any serious medical needs. It only improves subjective daytime sleepiness. Any serious medical needs, cognitive impairment, ED, MI, CVA, related to OSA do not benefit from CPAP. They do benefit from weight loss. With current BMI of 33.4 I would recommend weight loss regardless of outcome of sleep study. Since study would not change clinical management there is no benefit to completing the study.

Id.

- 6 -

On January 12, 2022, PA Flick saw Henderson on a sick call request with complaints that his sleep issues had not gotten any better and he was still experiencing symptoms. (Doc. 21-16 at 1). He further stated that he "feels discriminated against that he doesn't have a CPAP machine". Id. PA Flick "advised [Henderson] that [Flick] put in a consult for an offsite sleep study and that it was denied by the medical director" because "there is no evidence for any benefit for this other than improvement in daytime somnolence per the medical director" and that Henderson "has been told this in the past and advised that he needs to lose weight with lifestyle modifications to help improve these symptoms." Id. It was noted that "patient agreeable to TX Plan." Id.

On January 24, 2022, PA Flick saw Henderson for a follow-up encounter and again advised him that his sleep study had been denied by the medical director and to lose weight to address his sleep disorder. (Doc. 21-17 at 2).

On April 15, 2022, Henderson's appeal of his Administrative Remedy to the Regional Director was denied as follows:

> You appeal the response of the Warden of LSCI Allenwood and contend you are not receiving appropriate accommodations for Sleep Apnea. You state your experiencing nighttime symptoms and drowsiness during the day. You request further treatment, including a CPAP machine.

A review of your appeal reveals the Warden adequately addressed your concerns. According to the Bureau Electronic Medical Record, you have been evaluated numerous times for snoring and daytime drowsiness. You were last evaluated for this complaint on January 24, 2022, during a follow up evaluation. Your physical examination was normal, and you were advised conservative treatment is recommended. You were educated on weight loss and lifestyle modifications and advised to follow up as needed. According to your medical record, you have not returned to sick call or voiced any complaints since this encounter. If you are still experiencing symptoms, you may see your Primary Care Provider via sick call for further treatment options. Based on your medical assessments, a CPAP machine is not indicated at this time. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

(Doc. 1-1 at 6).

On May 5, 2022, Henderson filed an appeal to final review before the Central Office, (Doc. 1-1 at 8), who, on June 16, 2022, reiterated the above medical findings and found the following:

There is a clear progression of clinical assessments, follow-up consultation, diagnostic evaluation, and treatment in accordance with evidence-based standard of care and within the scope of services of the Federal Bureau of Prisons. If your condition has changed or worsened, please sign up for daily sick-call to have your concerns appropriately addressed by your Primary Care Provider. Your primary care team will continue to make recommendations as needed. As recommendations are made, a

course of treatment will be determined. Given this, we shall defer diagnostic testing and treatment interventions to the Health Services staff at the local level.

Based on this information, without evidence to the contrary, we do not find, nor did you provide, any evidence corroborating your allegations to substantiate your claim of inadequate care for sleep apnea. You have consistently been provided timely and appropriate medical care in accordance with Program Statement 6031.04, <u>Patient Care</u>, and the National Drug Formulary.

Considering the foregoing, this response is provided for informational purposes only.

(Doc. 1-1 at 9-10).

On July 28, 2022, Plaintiff filed the instant action claiming "prison medical staff in this circumstance exhibited deliberate indifference" to his serious medical need. (Doc. 1 at 7). For relief, Plaintiff seeks compensatory and punitive damages. <u>Id.</u>

## IV. **Discussion**

### A. **Eighth Amendment Medical Claim**

Plaintiff alleges that Defendants failed to provide him with adequate medical care regarding his sleep apnea, a serious medical condition, in violation of the "Eighth Amendment proscription against cruel and unusual punishment." (Doc. 1).

In <u>Bivens</u>, the Supreme Court recognized that a plaintiff may bring an implied damages remedy against a federal official for violation of the

plaintiff's Fourth Amendment right to be free from unreasonable searches, despite the fact that no federal statute or constitutional provision allowed such a cause of action. Bivens, 403 U.S. at 397. Since that decision, the Supreme Court has only recognized an implied damages remedy against a federal official in two other cases: Davis v. Passman, 442 U.S. 228, 245 (1979) (recognizing an implied cause of action for sex discrimination under the Fifth Amendment), and Carlson v. Green, 446 U.S. 14, 18–23 (1980) (recognizing an implied cause of action for inadequate medical care under the Eighth Amendment). Mack v. Yost, 968 F.3d 311, 314 (3d. Cir. 2020).

In the absence of Supreme Court extensions of the implied damages remedy under Bivens, lower federal courts recognized that they had the power to extend Bivens to new fact situations in appropriate circumstances. See id. at 319. That changed with the Supreme Court's decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017).

In Ziglar, the Supreme Court considered several Bivens claims brought to enforce the plaintiff's rights under the Fourth and Fifth Amendments, all of which were factually distinct from the claims in Bivens, Davis, and Carlson. Id. at 1853–54. In analyzing the claims, the court noted that it had taken a much more cautious approach to implying causes of action in the years since Bivens had been decided. Id. at 1855–56. Given that more cautious

approach, the court acknowledged that the decisions in Bivens, Davis, and Carlson "might have been different if they were decided today." Id. at 1856. The Supreme Court instructed lower courts to be cautious in extending Bivens remedies to new contexts, noting that "expanding the Bivens remedy is now a 'disfavored' judicial activity," and that decisions of whether to recognize new causes of action should generally be left to Congress. Id. at 1857 (quoting Iqbal, 556 U.S. at 675).

Under Ziglar, a court presented with a Bivens claim must conduct a two-part analysis. Mack, 968 F.3d at 320. First, the court "must determine whether the Bivens claim presents a 'new context.'" Id. (quoting Ziglar, 137 S. Ct. at 1859). A case presents a new context if "is different in a meaningful way from previous Bivens cases decided by the Supreme Court." Id. (internal alterations omitted) (quoting Ziglar, 137 S. Ct. at 1859). The difference between the two cases does not need to be stark, because "a modest extension is still an extension." Id. (quoting Ziglar, 137 S. Ct. at 164). Second, if the case presents a new context, the court "must then determine if there are 'special factors counselling hesitation' in expanding Bivens." Id. (quoting Ziglar, 137 S. Ct. at 1857). This determination "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a

damages action to proceed." Id. (quoting Ziglar, 137 S. Ct. at 1857–58.) "If 'there are any special factors that counsel hesitation,' courts must 'reject the request' to expand Bivens." Id. (quoting Hernandez v. Mesa, 140 S. Ct. 735, 743 (2020)).

More recently, however, on June 8, 2022, the Supreme Court decided Egbert v. Boule, 142 S. Ct. 1793 (2022). In that case, the Supreme Court clarified the framework that courts are to use before implying a cause action for money damages in a new Bivens context. In particular, the Supreme Court recognized its precedents that describe the two-part inquiry but explained that these two parts "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." See id. at 1803. The Supreme Court further explained that "[i]f there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." See id. (citation and internal quotation marks omitted).

Thus, the outcome of Egbert is—essentially—that extending a Bivens remedy to a new context will be unavailable in all but the most unusual of cases. See id. (instructing that "[i]f there is a rational reason" to think that Congress is better equipped to create a damages remedy, "as it will be in most every case, … no Bivens action may lie"). In other words, the Supreme

- 12 -

Court has "all but closed the door on <u>Bivens</u> remedies." <u>See</u> <u>Dyer v. Smith</u>, 56 F.4th 271, 277 (4th Cir. 2022) (citation omitted).

Plaintiff's complaint attempts to bring a <u>Bivens</u> claim in the context of deliberate indifference to a severe medical need. (Doc. 1). Plaintiff's deliberate indifference claim is not a new context under <u>Bivens</u>. The Court, having determined that a <u>Bivens</u> remedy is available for Plaintiff's Eighth Amendment deliberate indifference claim against Defendants, <u>see</u> <u>Carlson</u>, 446 U.S. at 23-25 (extending an implied cause of action for money damages pursuant to <u>Bivens</u> under the Eighth Amendment's Cruel and Unusual Punishment Clause in the prison medical care context); <u>Shorter v. United States</u>, 12 F.4th 366, 372 (3d Cir. 2021) (explaining that "[i]f a case does not present a new <u>Bivens</u> context, the inquiry ends there, and a <u>Bivens</u> remedy is available"), the Court addresses the merits of Plaintiff's Eighth Amendment deliberate indifference claim.

To sustain a constitutional claim under the Eighth Amendment for deliberate indifference to a serious medical need, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. <u>See</u> <u>Pearson v. Prison Health Serv.</u>, 850 F.3d 526, 534 (3d Cir. 2017). A serious medical need is "one that has been diagnosed by a

physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro</u>, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted). A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Moreover, when it comes to claims of deliberate indifference, there is a "critical distinction" between allegations of a delay or denial of a recognized need for medical care and allegations of inadequate medical treatment. <u>Pearson</u>, 850 F.3d at 535 (citation omitted).

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment ... which remains a question of sound professional judgment.'" <u>Byrd v. Shannon</u>, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting <u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir.1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990); <u>Monmouth Cty. Corr. Inst'l Inmates</u>, 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere

- 14 -

allegations of malpractice do not raise issues of constitutional import... Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

Moreover, non-medical personnel, such as Defendant, Health Services Assistant Creveling, "are not deliberately indifferent under the Eighth Amendment simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor or because they deferred to the judgment of the medical staff treating the inmate." Dunyan v. Pa. Dep't of Corr., No. 1:16-cv-02103, 2017 WL 3509243, at *7 (M.D. Pa. Aug. 16, 2017) (citing Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993)). The scienter requirement will only be imputed where they had a reason to believe prison doctors, or their assistants were mistreating or not treating a prisoner. Id.

Here, Plaintiff's complaint centers on Defendant, Dr. Buschman's decision, after reviewing Plaintiff's sleep study, to disallow Plaintiff an outside sleep study as well as a CPAP machine.

Initially, the Court notes that Defendant Buschman is a commissioned officer and member of the United States Public Health Service. (Doc. 21-2 at ¶¶ 1-2). His current rank is Commander. Id. He was detailed to the United

- 15 -

States Department of Justice, Federal Bureau of Prisons ("BOP") as the Clinical Director at FCC-Allenwood. Id.

Under the Public Health Service Act, the exclusive remedy for personal injury damages resulting from the performance of medical functions by any officer or employee of the Public Health Service while acting within the scope of their office or employment is a suit against the United States pursuant to the FTCA. See 42 U.S.C. §233(a). Section 233(a) thus "grants absolute immunity to [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct." Hui v. Castaneda, 559 U.S. 799, 806 (2010). Thus, the Public Health·Service Act precludes suit against Clinical Director Brian Buschman, MD, and he is entitled to summary judgment as a matter of law. See Anderson v. Bureau of Prisons, 176 F. App'x. 242, 243 (3d Cir. 2006) (affirming dismissal of Bivens action against USPHS employee); Bone v. Ebbert, 2022 WL 943036, *9 (M.D. Pa. Mar. 29, 2022) (dismissing USPHS employee from action as statutorily immune).

Moreover, assuming, without deciding, that Plaintiff's sleep apnea was serious in the constitutional sense, the record evidence more than amply demonstrates that Plaintiff received medical attention, and that the attention

Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff acknowledges that he was seen by Dr. Moclock on January 26, 2021, who, after hearing of Plaintiff's complaints of severe snoring and episodes of daytime sleepiness, ordered a sleep study, which was administered by LSCI-Allenwood Medical Department on August 8, 2021, within two weeks of his first complaint to Dr. Moclock. Plaintiff's results were reviewed with him and although an outside sleep study was requested, Dr. Buschman, in his capacity as Clinical Director, found that an outside study was not warranted at this time and that Plaintiff's daytime sleepiness could be alleviated with weight loss.

At best, Plaintiff's complaint demonstrates his disagreement with the treatment plan recommended by Dr. Buschman, with respect to his need for a CPAP machine. Though he may have disagreed with the Dr. Buschman's assessment that a CPAP was not medically necessary, his disagreement with the course of action that was taken is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105-06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)). This is particularly so in light of the fact that there is no evidence of record

- 17 -

that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. <u>Farmer</u>, 511 U.S. at 837; <u>Rouse</u>, 12 F.3d at 197. To that extent, the record demonstrates that Plaintiff has been medically assessed on numerous occasions by the LSCI-Allenwood medical department, including Defendant, Dr. Moclock, which shows Defendants' continued attentiveness to Plaintiff's situation.

Thus, the Plaintiff's complaint amounts to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the LSCI-Allenwood Medical Department. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. <u>Nottingham v. Peoria</u>, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Defendants' motion for summary judgment will be granted.

## B. <u>Personal Involvement of Defendants AHSA Creveling and PA Pedro</u>

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See <u>Groman v. Township of Manalapan</u>, 47 F.3d 628,

638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under §1983 cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, *via* the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")). Consequently, any attempt by Plaintiff to establish

liability against a defendant solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Prvor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

With respect to Defendants AHSA Creveling and PA Pedro, their only involvement in Plaintiff's complaint is evidenced by Plaintiff's November 30, 2021, TRULINCS correspondence to PA Pedro, requesting her assistance in securing a CPAP machine (Doc. 1-1 at 13) and AHSA Creveling's response to Plaintiff's July 6, 2022 Informal Resolution, complaining that his outside sleep study request was denied. (Doc. 1-1 at 2). Based on the record, which reveals that the only involvement of these two Defendants was through their involvement with Plaintiff's grievances, it is apparent that Plaintiff is attempting to establish liability against these Defendants based upon either their respective supervisory capacities or their review of his institutional grievances. Pursuant to the above discussion, either approach is insufficient

to establish civil rights liability against these Defendants and they are entitled to judgment as a matter of law.

## V.  <u>Conclusion</u>

Based on the undisputed facts of record, Defendants' motion for summary judgment will be granted.

A separate Order will be issued.

**BY THE COURT:**

**JUDGE JULIA K. MUNLEY**
**United States District Judge**

Date:  January 19, 2024

- 21 -